UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11975-RGS
CRIMINAL ACTION NO. 05-10260-RGS

LAWRENCE P. NOVAK

v.

UNITED STATES OF AMERICA

MEMORANDUM AND ORDER ON PETITIONER'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

January 20, 2012

STEARNS, D.J.

Lawrence Novak, proceeding pro se, brought this petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Novak makes constitutional claims of ineffective assistance of counsel and violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). He also challenges the voluntariness of his guilty plea.[1] For the reasons to be stated,

---

[1] Novak raises a challenge to the court's refusal to suppress the recordings of his jailhouse telephone conversations with Scott Holyoke, a client. Failed motions to exclude evidence on Fourth Amendment grounds are not subject to collateral review by way of a § 2255 petition. *See Stone v. Powell*, 428 U.S. 465, 518 (1976); *Tisnado v. United States*, 547 F.2d 452, 456 (9th Cir. 1976); *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993). *Cf. Arroyo v. United States*, 195 F.3d 54, 55 n.1 (1st Cir. 1999) (noting the Supreme Court's "hint" that *Stone* applies to § 2255 petitions and citing *Cook* and a later Ninth Circuit case as so determining, but reserving the issue in the First Circuit).

Novak's petition will be denied.

BACKGROUND

Lawrence Novak is currently serving an 87-month sentence at FMC Devens, Massachusetts. Prior to his conviction, Novak was a member of the Massachusetts bar. Novak was also admitted to practice before the United States District Court for Massachusetts. Novak maintained a law office in Brockton, Massachusetts, from which he specialized in criminal defense work. By his account, he appeared as defense counsel in "three or four hundred" jury cases. Plea Hr'g Tr. at 18.

In June of 2005, Novak agreed to represent Scott Holyoke, a Brockton-area methamphetamine dealer.[2] At the time, Holyoke was detained at the Barnstable County Jail awaiting trial on federal drug charges. A Federal Defender had been appointed to represent Holyoke, but after deciding to enter a guilty plea, Holyoke engaged Novak to assist with his federal sentencing. Holyoke and Novak communicated primarily by telephone.

Unbeknownst to Novak (although presumably known to the secretary who placed the calls to Holyoke), the conversations between the two men were being monitored by Barnstable Jail officials. It became quickly apparent that Novak and

---

[2] Holyoke pled guilty to the federal drug trafficking charges on July 20, 2006. *See* 04-cr-10084-JLT-3 (D. Mass).

Holyoke were concocting a scheme to invalidate several of Holyoke's prior state convictions that the two men believed would impact the length of the federal sentence. In furtherance of the scheme, Novak proposed that Holyoke sign perjurious affidavits impugning his prior state convictions. After being confronted by investigators about the plot, Holyoke agreed to cooperate with authorities in building a case against Novak.

Novak authored three false affidavits for Holyoke alleging that the judges who had presided over three of the state convictions had each failed to conduct a proper colloquy before accepting Holyoke's guilty pleas. Despite his knowledge of their falsity, Novak filed the affidavits in state court in support of motions to vacate the pleas. Novak also offered to launder $107,000 that Holyoke had amassed in drug proceeds on the understanding that Novak would keep a percentage of the total as a "fee."

## *Procedural History*

Following his indictment on September 27, 2005,[3] Novak sought to suppress the recordings of the conversations with Holyoke, arguing that they were obtained in violation of his [Novak's] rights under the Fourth, Fifth and Sixth Amendments, as well as the statutory exclusionary provisions of U.S.C. 18 § 2510 (Title III of the Omnibus

---

[3] The indictment consisted of three counts: obstruction of justice, 18 U.S.C. § 1503 (count 1), and money laundering in violation of 18 U.S.C. § 1956(a)(3)(B) and (C) (counts 2 and 3).

Crime Control and Safe Streets Act of 1968).[4] The district court (Lindsay, J.) granted Novak's motion, but the decision was later reversed by the First Circuit Court of Appeals. *See United States v. Novak*, 531 F.3d 99 (1st Cir. 2008).[5] On October 27, 2008, Novak's case was transferred to this session. On February 2, 2009, Novak pled guilty to the three counts of the indictment. As to count 1 only (obstruction of justice), the court accepted the plea on an "*Alford*" basis[6]. Plea Hr'g Tr. at 4. To the charges

---

[4] The Title III argument was doomed from the outset. The consent exemption to Title III renders its exclusionary provisions inapplicable when "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(C). *See United States v. Footman*, 215 F.3d 145, 154-155 (1st Cir. 2000) (holding no Title III violation when prisoner impliedly consented via audio message informing him of interception, except for previously *approved* attorney-client communications) (emphasis added)); *United States v. Pratt*, 913 F.2d 982, 986-987 (1st Cir. 1990) (consent of one party to a conversation is sufficient to permit its interception by a person acting under color of law); *Griggs-Ryan v. Smith*, 904 F.2d 112, 114-115 (1st Cir. 1990) (initial warning that calls were recorded manifested "'implied consent' or 'consent in fact'" sufficient to trigger consent exception), citing *United States v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987) (Title III exclusion applicable "'where . . . one of the parties to the communication has given prior consent to such interception.' . . . Congress intended the consent requirement to be construed broadly."); *United States v. Willoughby*, 860 F.2d 15, 19 (2d Cir. 1988) (explicit and implied consent affords safe-harbor for interceptors).

[5] The Court of Appeals held that because Holyoke had consented to the monitoring of his calls, Novak had no reasonable claim to an expectation of privacy under the Fourth Amendment. *Id.* at 103. Although the Court acknowledged the potentially "troubling" Sixth Amendment issue raised by the government monitoring of attorney-client conversations, it held that Novak had waived that ground on appeal. *Id.* at 104.

[6] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a

4

of money laundering (counts 2 and 3), Novak pled guilty without stipulation. Novak's sentencing took place on May 22, 2009. At the conclusion of the hearing, the court imposed an 87-month sentence with two years of supervised release and a fine of $20,000.[7] Sent. Hr'g Tr. at 20. Novak timely filed this motion to vacate under 28 U.S.C. § 2255, on November 15, 2010.[8]

DISCUSSION

**Sixth Amendment Claims**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." The right to counsel includes the right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). Effective counsel does not mean perfect counsel. "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight." *Id.* at 689. The court

---

prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

[7] The Probation Office calculated a total offense level of 30. Dkt #72 at 1. With a criminal history category of I, the advisory sentencing guideline range was determined at 97 to 121 months of incarceration and a fine of $15,000 to $150,000. PSR ¶¶ 77, 86. The court adopted the Probation Office's advisory guideline sentencing findings, although it imposed a sentence below the recommended minimum.

[8] Novak later filed motions to amend the petition by adding additional grounds on February 28, 2011, April 19, 2011, and May 23, 2011, all of which were allowed.

"must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). "First, a reviewing court must assess the proficiency of counsel's performance under prevailing professional norms. This evaluation demands a fairly tolerant approach; after all, the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense. . . . The second line of inquiry . . . entails a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994) (internal citations and quotation marks omitted).

Novak alleges that his counsel, William Cintolo, was ineffective in two respects: (1) by failing to raise a Sixth Amendment objection to the interception of the jailhouse telephone conversations on appeal to the First Circuit[9]; and (2) by failing to give

---

[9] The substantive Sixth Amendment claim as Novak describes it has two aspects. The first (which was mentioned in passing by the Court of Appeals) was the propriety of jailhouse monitoring of attorney-client conversations in contravention of federal and state regulations. This ground was waived by Novak on appeal. The second aspect, a claimed violation of the attorney-client privilege has no validity because the privilege belongs to Holyoke, the client (who has waived it), and in any event would be vitiated by the crime-fraud exception to the privilege. *See Kevlik v. Goldstein*, 724 F.2d 844, 850 (1st Cir. 1984) ("The privilege belongs to and may be waived only by the former client."); *United States v. Rakes*, 136 F.3d 1, 4 (1st Cir. 1998) ("The attorney-client

6

adequate advice on the consequences of pleading guilty, more specifically, by erroneously predicting the length of the sentence the court was likely to impose, thereby rendering Novak's plea involuntary.

There are two answers to Novak's Sixth Amendment contentions: (1) he is barred from raising any substantive violation of the Sixth Amendment during the gathering of evidence by the doctrine of judicial estoppel; and (2) the argument with respect to counsel's alleged ineffectiveness is based on a fundamental factual omission. The principle of judicial estoppel precludes a defendant who has pled guilty in open court from collaterally attacking his plea based on constitutional violations alleged to have occurred prior to the plea (absent a reservation of rights under Fed. R. Crim. P. 11(a)(2) with the consent of the court and the government). *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). *See also United States v. Gaffney*, 469 F.3d 211, 215 n.2 (1st Cir. 2006) (a principle enforced with "monotonous regularity"). As Novak's plea was entered unconditionally, he is estopped from relying on any claimed violation of his Sixth Amendment rights during the government's gathering of evidence. With respect to the accusation directed at his counsel, Novak omits mention of the fact that attorney Cintolo did raise the Sixth Amendment issue in the first hearing on the motion to

---

privilege is forfeited . . . where the client sought services of the lawyer to enable or aid the client to commit what the client knew or reasonably should have known to be a crime or fraud.").

suppress in the district court, and when that court ruled in his favor on Fourth Amendment grounds, reasonably defended the court's rationale when the government appealed the ruling to the First Circuit. Moreover, after the First Circuit reversed the district court on Fourth Amendment grounds only, Cintolo filed a motion for reconsideration in the district court. In light of the observations made by the Court of Appeals in reversing the original favorable ruling, Cintolo asked this (successor) court to "reexamine" the motion to suppress and issue a ruling in favor of Novak on Sixth Amendment grounds. The court denied the motion and set the case for trial. Three days later (the day before the empanelment was to take place), Novak entered his guilty plea.

Where a defendant has pled guilty to a charge, "the prejudice prong of the test requires him to show that, but for his counsel's unprofessional errors, he probably would have insisted on his right to trial." *United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751 (1997). Like the defendant (Dyer) in *LaBonte*, this is a showing that petitioner has not made (or even attempted). "Dyer's self-serving statement that, but for his counsel's inadequate advice he would have pleaded not guilty, unaccompanied by either a claim of innocence or the articulation of any plausible defense that he could have raised had he opted for a trial, is insufficient to demonstrate the required prejudice." *Id.* As *Labonte* makes clear,

8

advice he would have pleaded not guilty, unaccompanied by either a claim of innocence or the articulation of any plausible defense that he could have raised had he opted for a trial, is insufficient to demonstrate the required prejudice." *Id.* As *Labonte* makes clear, "[a]n attorney's inaccurate prediction of his client's sentence, standing alone, will not satisfy the prejudice prong of the ineffective assistance test." *Id.*, citing *Knight v. United States*, 37 F.3d 769, 774 (1st Cir. 1994). *See also Moreno-Espada v. United States*, 2012 WL 149491 (1st Cir. Jan. 19, 2012); *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990); *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989).

**Voluntariness of the Guilty Plea**

Novak alleges that his plea was involuntary.[10] By way of a perfunctory reference to *United States v. Medino Silverio*, 30 F.3d 1, 4 (1st Cir. 1994), he argues that there was a "total failure to conduct [the] plea colloquy mandated by Rule 11." Pet'r's Mot. to Amend. at 4 (Dkt # 105). In this regard, he cites the court's alleged failure to advise him of any restitutionary obligation and the mandated special assessment. He also faults the court for failing to calculate the applicable sentencing guidelines at the plea hearing, for failing to advise him of the consequence of waiving

---

[10] The court notes the inherent lack of credibility of a claim of involuntariness for want of knowledge by a lawyer who (by his account) has represented clients in hundreds of criminal jury trials.

9

his appellate rights, and for failing to warn him that any statement he made during the course of the hearing could be used in a prosecution for perjury or false statement.

As the transcript of the February 2, 2009, makes clear, Novak was informed of the special assessment when the court inquired of the prosecutor as to the maximum statutory penalties. Plea Hr'g Tr. at 11-12. Restitution was irrelevant as Novak's crimes were "victimless" in the sense that they triggered no restitutionary obligation. Rather, Novak faced a forfeiture claim by the government of which he was informed. *Id.* at 13. The same is true of any perjury warning, as Novak has not been charged with perjury or false statement as the result of anything that he said under oath during the hearing.[11] Finally, the court had no obligation to calculate the sentencing guidelines at the plea hearing – that is done at the sentencing hearing[12] – nor did the court have any obligation to explain the consequence of an appellate waiver as there was none.[13] Novak's complaint that the government did not meet its obligations to produce

---

[11] That being said, prior to asking for the government's recitation of the facts, the court warned Novak that it would be asking him whether he acknowledged the facts as presented and also (immediately prior to the government's presentation) warned him that he was waiving the privilege against self-incrimination for that purpose among others. *Id.*

[12] Rule 11 requires the court to inform a defendant at a plea hearing of its obligation to calculate and consider the applicable guideline range before deciding on a sentence as the court did here. *Id.* at 14-18. *See* Fed. R. Crim. P. 11(b)(1)(M).

[13] Novak pled guilty without a plea agreement. Plea Hr'g Tr. at 14. *See* Fed. R. Crim. P. 11(b)(1)(N).

exculpatory evidence under *Brady* and *Giglio*, specifically, that the government failed to disclose Holyoke's mental health treatment records, is contradicted by Novak himself in Ground 10 of his amended petition. *See also* Govt's Discovery Letter of November 17, 2008 (Govt's Opp'n - Ex. E). Novak's speculative assertion that the government made an undisclosed $40,000 payment to Holyoke in exchange for his cooperation is too specious for comment.[14]

### ORDER

For the foregoing reasons, Novak's Motion to Vacate, Set Aside, or Correct Sentence/Conviction is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

UNITED STATES DISTRICT JUDGE

---

[14] "If the Government assisted Holyoke, and had discussion with Holyoke . . . . If Holyoke received $40,000 from the government and if Novak had known that fact he would have not pled guilty." Pet'r Br. at 16 (Dkt #98).